**WILKESON, Admr., Plaintiff-Appellee, v. ERSKINE & SONS, INC., Defendant-Appellant.**

Ohio Appeals, Seventh District, Mahoning County.

No. 2967. Decided June 8, 1945.

4

Harrington, Huxley & Smith, Youngstown, for plaintiff-appellee.

R. J. Nicholson and Hermon N. George, Youngstown, for defendant-appellant.

## OPINION

By PHILLIPS, J.:

This is an action for wrongful death and came before this court originally on defendant's appeal on questions of law from a judgment of the court of common pleas entered upon a jury verdict for the plaintiff.

Defendant, an Ohio trucking corporation, operating under authority granted by the Interstate Commerce Commission and the Public Utilities Commission of Ohio entered into a contract to haul limestone from Hillsville, Pennsylvania, to a road resurfacing project in Mahoning County, Ohio.

Defendant engaged "a dump truck" owned by the Lowellville Coal and Supply Company, a partnership, to haul such material allowing it to use its P. U. C. O. permit.

The evidence discloses that when last seen alive close to noon on the 29th day of May, 1942, "a nice sunshiny day", plaintiff's decedent, aged sixteen years and eleven months, was walking "probably about six to eight feet back of a companion", aged sixteen years who was walking in a northerly direction "on the berm" "near the improved portion", but off the improved portion of the Lowellville-Hubbard Road "about a foot from the edge of the (that) road"; that the companion of plaintiff's decedent first saw defendant's truck "after he pulled ahead of me" (him) when the truck passed him travelling on the "improved portion of the highway"; that both of them had reached a place on that highway near the brow of Reedy's Hill; that in the vicinity thereof the "hard-surface" portion of that highway is eighteen feet wide by actual measurement "winds there considerably" but "at this (that) particular place runs north and south"; that the distance from such hard-surface portion thereof to a ditch towards which the land tapers there varies as estimated by different witnesses from three to four and one-half to seven feet; that

such land consists partly of semi-improved travelable highway and is partly covered with "grass"; that the width of the dump truck owned by such partnership was seven feet "at the rear"; that the length of the "truck body or dump body itself" was eight feet, and the "overall length of the truck" "from bumper to bumper" was "seventeen feet six inches"; that the length of the "short running board on the cab of" the truck was "fifty inches"; that there was no overhang to the body except possibly an inch (R. 93) beyond the body thereof, "I would say it extended out," "but I didn't examine the truck to that extent"; that the rear of the truck was equipped with dual wheels.

The driver of the truck of the named partnership; which truck it is alleged struck and killed plaintiff's decedent, testified that the "dump part of the truck" did not "extend out beyond the cab" of the truck; that the "front fenders on either side of that truck extended out beyond all the wheels"; that as he came up the middle of the Lowellville-Hubbard Road toward Reedy's Hill such truck which then carried a seven and one-half ton load, was traveling in "extra low" gear about eight miles an hour; that he had no difficulty seeing "these boys" walking on the grass strip right off the edge of the hard surface of such highway, "entirely on the clear of the front of" that truck; that "just as the front fender" of such truck passed them they "passed out of his view" at which time and during the time consumed immediately before by the truck traveling seventy-five feet he saw plaintiff's decedent "jumping" "sort of kicking at the grass" "right off the edge of the hard surface" of the road; that at that time there was no other vehicular traffic on the highway in the immediate vicinity of Reedy's Hill other than the truck he was operating; that he did not sound a warning of the approach of the truck he was operating or divert the course thereof; did not see that truck come in contact with the body of plaintiff's decedent at any time, and did not see him killed; that he first recognized any interference with the operation of such truck "when it lifted a little" and he felt a bump on "the right back wheel" thereof, and knew plaintiff's decedent was killed only when he looked through his "rear vision mirror", and stopped his truck a little ways up the hill immediately thereafter to turn into a driveway to stop, which the companion of plaintiff's decedent testified was between ten and twenty feet from the body of plaintiff's decedent; that upon alighting therefrom he discovered "this boy's body lying on the side of the road".

Other witnesses testified that the body of plaintiff's decedent was lying "parallel to the road" "with the head to the north and the feet to the south" with his head "in the direction he was coming or going rather" approximately a foot or eighteen inches from the berm of the road, in the "improved part" thereof.

There is evidence that when he stopped "the marks of the right rear wheel (of the truck) were about a foot or eighteen inches from the berm, that is the hard surface of the road", and extended in a straight line; that "there were marks on the right rear wheel of the truck from the boy's head, the blood," which indicates the position of the truck on the highway at that time.

There is no eye witness testimony as to what happened after plaintiff's decedent "passed out of his (the driver's) view."

The companion of plaintiff's decedent testified that he didn't see plaintiff's decedent killed; that "at the time the truck passed them", at which time he saw plaintiff's decedent alive last, that he and the latter were walking on the grass on the easterly side of such highway "six or eight feet on the berm" "in the clear" of such truck, and as far as such companion knew plaintiff's decedent "was still back of him" but he did not know what decedent "was doing immediately before the accident" happened; that he heard no warning and did not know of the approach of such truck until after it pulled ahead of him and did not see it strike or kill decedent.

Defendant contended on original hearing that the trial judge erred to its prejudice in overruling its motion for judgment in its favor made at the close of plaintiff's case, at the conclusion of all the evidence and notwithstanding the verdict of the jury against it, and that the verdict of the jury and judgment entered thereon are contrary to law.

In the original opinion I said "viewing this case as a majority of the court does it is believed that it is necessary to pass upon but these four of plaintiff's thirteen assigned grounds of error;" that "defendant's claimed error that the trial court erred prejudicially to it in overruling its motion for judgment in its favor at the close of plaintiff's case was waived when it proceeded to introduce evidence to support its case;" and that "the trial judge did not err in that respect as charged by defendant.".

By journal entry the majority of the court held that the court erred in overruling such motion which of course we believed was true, but as we suggested in the opinion the er-

ror was waived. In other words, the error existed but was waived.

In the opinion written to support the majority decision of the court in denying plaintiff's application for rehearing it was said:—

"In considering plaintiff's application for rehearing I have reread the entire record carefully and scrutinized the evidence plainstakingly and as a result thereof and the careful consideration of such application by the court, a majority of the court conclude, as they did upon original hearing, that there is no evidence of probative value contained therein showing that the death of plaintiff's decedent was directly and proximately caused and brought about by and through the negligence of the operator of the truck of the Lowellville Coal and Supply Company in any one or more of the grounds alleged in plaintiff's second amended petition, and that the jury could have arrived at the verdict reached only by guess work or by speculating as to what was the direct and proximate cause of the death of plaintiff's decedent.

"From what we have said it is obvious that upon the evidence disclosed by the record, a brief resume of which is recited in the factual statement of this opinion, that a majority of the court conclude that the trial judge having failed to sustain defendant's motion for verdict directed in its favor at the conclusion of all the evidence should have sustained its motion for judgment in its favor notwithstanding the verdict of the jury against it, and·in failing so to do committed error prejudicial to the defendant."

Upon hearing on allowance of motion to certify the record of this court the supreme court reversed the decision of this court and remanded the cause to us with instructions to pass upon plaintiff's remaining thirteen assigned grounds of error, which we proceed to do.

Defendant's contention that the trial court erred to its prejudice in excluding evidence indicating that the driver of the truck involved in this case was an independent contractor, or the servant of an independent contractor, and accordingly could escape liability by delegating his duty of protecting the public by presenting evidence that the driver of the truck was an independent contractor, upon the evidence in the case, is answered by the decision of the supreme court in the case of **Duncan v Evans, 134 Oh St 486.**

It is believed that the trial judge did not err to defendant's prejudice in excluding such evidence or in refusing to allow the driver of the truck involved in this case to

answer the question "and was there any occasion that you observed for blowing a horn at any time?" as urged by defendant. That was "a matter for the jury."

The trial judge refused to charge the jury in writing before argument the following propositions of law submitted by defendant:—

"The Court charges you that under the law of Ohio pedestrians are prohibited from stepping into or upon a public road or highway without looking in both directions to see what is approaching, and if you find from all the evidence in this case that Plaintiff's decedent, Lynn Reed Wilkeson, was walking upon the berm of this road or highway, then it was his duty to look in both directions for approaching vehicles before stepping into or upon this road or highway, and if he failed to do so his failure would be negligence."

"The Court charges you as a matter of law that it was the duty of Lynn Reed Wilkeson to exercise due care for his own safety in using the highway at the time and place where his death occurred, and the Court charges you that in using the travelled portion of the highway, where usable walks or paths are not provided, if you find by the greater weight of the evidence that he was using the travelled portion of the highway, it would be his duty whereever practicable to use that portion of the travelled part of the highway where he would be facing the approaching traffic, which in this case would be the westerly side of the highway."

"The Court charges the Jury as a matter of law applicable to this case, that if you find by the greater weight of the evidence that Lynn Reed Wilkeson was guilty of negligence which directly and proximately contributed in the slightest degree toward causing his death, then the Court says to you there can be no recovery in this case, and your verdict should be in favor of Erskine & Son Inc."

The contributory negligence of plaintiff's decedent was not pleaded. Counsel for plaintiff took the position, and, in my opinion, aptly states by brief with reference to the contributory negligence of plaintiff's decedent what I attempted to and in part did state in the majority opinion denying plaintiff's application for rehearing with reference to any negligence of defendant which was the proximate cause of the death of plaintiff's decedent when he said:—

"It must be recalled that there was no actual eye-witness to the occurrence. So far as the record shows, plaintiff's decedent was at all times doing that which he had an absolute right to do and there is no one to testify that he was negligent and there is no testimony in the record to show that he was at any time negligent. In order for the court to submit such issue to the jury, there would have to be testimony warranting such submission, and the court very simply took the position that there was no such testimony and further that in order to charge such issue he would have to speculate as to decedent's actions in order to submit it to the jury, and that the jury would then have to join with him in speculation as to decedent's actions in order to pass on the issue. This was not proper and could not be done by the court."

"Let us take an example of what might have happened to decedent. Suppose that due to lack of warning of the approach of the truck, decedent was proceeding along unaware of its approach; that as it came along side of him it startled him and caused him to fall under the wheel, or suppose that through no fault of his as he was proceeding along, he stumbled or tripped or suppose that decedent, like any number of other persons in the exercise of ordinary care did not at all times walk in a perfectly straight line. Under anyone of these situations decedent could have been run over by defendant's truck, and it is true that by the same process of speculation it could be supposed he was killed by the truck because of a failure of care on his part. The point is, however, that there is no testimony to show his action and certainly no testimony to show negligence on his part and this, together with the presumption of law that he acted at all times in the exercise of ordinary care, prevents submission of the issue of negligence on his part to the jury."

"Defendant's request No. 3, in addition to the above reasons, could not be submitted to a jury because it is predicated upon a 'Stepping into or upon' a public road or highway * * *. The evidence indicates that plaintiff was walking on the berm and as defendant's driver said, just at the edge of the hard surface of the highway."

What I tried to say in the majority opinion written in support of the court's denial of plaintiff's application for rehearing with reference to defendant's negligence "that there is no evidence of probative value contained therein (the re-

cord) showing that the death of plaintiff's decedent was directly caused and brought about by and through the negligence of the operator of the truck of the Lowellville Coal and Supply Company in any one or more of the grounds alleged in plaintiff's second amended petition, and that the jury could have arrived at the verdict reached only by guess work or by speculation as to what was the direct and proximate cause of the death of plaintiff's decedent" was what counsel for defendant said in the quoted portion of his brief with reference to the contributory negligence of plaintiff's decedent, in which I concur. Counsel for defendant succeeded —I failed.

The thought I tried to express with reference to the contributory negligence of plaintiff's decedent when I say that there is no evidence of probative value of negligence on the part of plaintiff's decedent warranting submission of that issue to the jury in this case is what I tried to say in the majority opinion denying defendant's application for rehearing with reference to defendant's negligence when I said that there was no evidence of probative value of any negligence of defendant which was the direct and proximate cause of decedent's death. There is no evidence that prior to the time when his body was found on the highway that he was in the path of defendant's truck at any time before the cab of such truck passed him. Rather there is abundant evidence to the contrary.

The quoted example from the brief of plaintiff impressed me at the time I wrote the majority opinion denying plaintiff's application for rehearing with reference to defendant's negligence as it does now with reference to the contributory negligence of plaintiff's decedent.

I could not then and cannot see now any evidence of contributory negligence on the part of plaintiff's decedent warranting submission of that issue to the jury as I could not see upon original hearing evidence of defendant's negligence warranting submission of the case to the jury.

Without further comment it is believed that the trial judge rightly took the position that the record disclosed no evidence of probative value of contributory negligence on the part of plaintiff's decedent warranting the submission of defendant's quoted requests to charge before argument to the jury and did not err prejudicially to defendant in refusing so to do.

During the trial in the court of common pleas the judge presiding there said:—

"There is an allegation as to negligence in causing the truck to be overloaded contrary to the laws of this state, but that I say to you is not an allegation on which a specific claim of negligence can be based and you will ignore it as an allegation of negligence."

Subsequently at plaintiff's request the trial judge charged the jury in writing before argument the following proposition of law:—

"I charge you that insofar as the issue of negligence of the truck driver is concerned, the plaintiff is required only to show by the greater weight of the probabilities that the driver of the truck was negligent in any one or more of the grounds set out in the 2nd Amended Petition, and that such negligence operated proximately to cause the collision."

Plaintiff contends that the trial judge committed error prejudicial to it in submitting this requested charge to the jury before argument after withdrawing from the jury plaintiff's quoted charge of negligence with respect to overloading the truck.

As said by counsel for defendant by brief, "the defendant certainly can not be very serious about this claim of error when in the requests before argument asked by defendant, and given by the court, contained the very same language 'by one or more of the acts of negligence as charged or set forth in plaintiff's second amended petition.' This same identical language was used in defendant's requests Nos. 1 and 2."

Now defendant claims that the trial judge committed error prejudicial to it in overruling its motion to withdraw from the consideration of the jury the specification of negligence alleged in plaintiff's second amended petition "that the defendant was negligent in causing the said motor truck to be overloaded contrary to the statutes of the State of Ohio."

As stated heretofore herein the trial judge withdrew this specification of negligence from the jury's consideration and in doing so said:—

"I am not going to charge it as a matter of negligence. The overloading of the truck, if it was overloaded, in the sense of it being a burden which affects the operation of the truck, and was a condition bearing upon the control and speed, and not any proximate cause."

It is believed that there is no error prejudicial to defendant in this assigned ground of error.

Defendant contends in assignments of error numbers 4 and 5 that the trial judge erred prejudicially to it in refusing to charge the jury in his general charge on the issue of the contributory negligence of plaintiff's decedent.

These contentions have been answered in disposing of defendant's assignment of error number 2, but to repeat they are answered again by saying that it is believed that there is no evidence of probative value in the record warranting a charge on the negligence of plaintiff's decedent except as said by counsel for plaintiff by brief "through the improper basis of speculation."

Now defendant contends that there is no evidence to sustain or support the verdict of the jury; that "said verdict was clearly the result of passion on the part of said jury and is manifestly based upon inference upon inference, not warranted by the evidence, contrary to law"; that "the verdict of said jury is against the clear and manifest weight of the evidence."

Bound as I am by, and interpreting the decision of the Supreme Court remanding this case to us, and respecting the Supreme Court as I do, and notwithstanding anything I said in the majority opinion written in support of a denial of plaintiff's application for rehearing, in view of that decision I dare not say that there is no evidence to sustain or support such verdict, or that the verdict of the jury was clearly the result of speculation, or that it was based "upon inference upon inference."

Since the Supreme Court decided that a jury question was presented by the evidence submitted to the jury, some of which it quoted, then upon that evidence I can not say that the verdict of the jury and judgment of the trial court entered thereon are against the "clear and manifest weight of the evidence."

As the result of reading the record for the fourth time I can not reach the conclusion at which defendant asks us to arrive "that the verdict of the jury is excessive, the result of passion and prejudice on the part of the jury against this defendant-appellant;" or "that the verdict of the jury and judgment of the trial court entered thereon are contrary to law; and do not find "other errors apparent upon the face of the record, prejudicial to this defendant-appellant."

As suggested this court is bound by the decision of the supreme court and the reversal of this court by that court disposes of defendant's assigned grounds of error that the

trial court did not err to plaintiff's prejudice "in overruling defendant-appellant's motion for a new trial."

The judgment of the trial court is affirmed.

NICHOLS, P J, CARTER, J, concur in judgment.